(Judge Jones of the fourth circuit sitting in place of Judge Dustin.)

GEORGE M. WILLIAMS ET AL. v. V. G. MORRIS.

1. DEPUTY SHERIFF MAY ARREST ON VIEW PERSONS FOUND VIOLATING FISH AND GAME LAWS.

Notwithstanding that the prosecution for violation of Sec. 77 of act 99 O. L. 380, Gen. Code 12525 (of the fish and game act), shall be instituted only upon complaint of the person or his agent upon whose lands, or rights in lands or waters, the trespass has been committed, a deputy sheriff or other person authorized by law to make arrests may, on view, arrest persons found violating such act and not be liable for false arrest.

2. WHETHER OFFICER SECURED WARRANT IN REASONABLE TIME IS FACT FOR DETERMINATION OF JURY IN FALSE IMPRISONMENT.

Where an arrest is made without warrant, the officer should in a reasonably short period of time secure such warrant and in the interval should only use such means and methods of detaining the person so arrested as is reasonably proper and necessary under the surrounding circumstances. Whether or not the officer has so acted is a question of fact for the jury.

3. ARRESTING OFFICER NOT LIABLE FOR FALSE IMPRISONMENT ON DEFECTIVE WARRANT SET ASIDE ON ERROR.

Where such an arrest is made and a warrant is afterwards sworn out, which is defective and the person arrested is bound over to the grand jury by a justice of the peace upon such defective warrant and on proceedings in error being taken from such justice's order the same is set aside, the arresting officer is not liable for false imprisonment, unless he has detained the arrested person an unreasonable length of time and in an improper manner.

Franklin County.

4. UNCONSTITUTIONALITY OF STATUTE DOES NOT MAKE ARREST PRIOR TO SO FINDING FALSE IMPRISONMENT.

An arresting officer is not liable for false arrest or imprisonment where he acts properly within the prescribed limits of. an act of the legislature, although such act may afterwards be declared unconstitutional, and void. Until decided otherwise, the legislature is presumed to have only passed constitutional laws.

5. COUNSEL FEES IN FALSE IMPRISONMENT CASE ALLOWABLE ONLY WHEN FACTS JUSTIFY EXEMPLARY DAMAGES.

While, in an action for false arrest or imprisonment, counsel fees may be allowed as compensatory damages, yet they cannot be allowed as such, unless the evidence is such as would justify the jury in allowing exemplary or punitive damages.

6. COUNSEL FEES INVOLVED IN SETTING ASIDE DEFECTIVE WARRANT NOT ALLOWABLE IF ARREST BE NOT ILLEGAL.

Where the arrest is not illegal and there is no false imprisonment, it is error to instruct the jury in an action of false arrest and imprisonment, that they may allow as compensatory damages an attorney's fee which was incurred in setting aside the proceedings of a justice of the peace had on a defective warrant.

[Syllabus by the court.]

ERROR to common pleas court.

*G. M. Carpenter,* for plaintiff in error.

*J. C. Nicholson,* for defendant in error.

**ROCKEL, J.**

The action in this case, according to the plaintiff's petition, is one of false arrest and imprisonment. The petition alleged, among other things, that the defendants maliciously assaulted plaintiff, shot at him, threatened to kill him and by force unlawfully compelled him to go with them and imprisoned him in a corn crib and there detained him against his will, depriving him of his liberty from about 8:30 o'clock P. M. on June 12, 1908, until about 5 A. M. June 13, and refusing him food and water and other matter during said time, and that on June 13 said defendants maliciously, unlawfully, and with force compelled the plaintiff to go with them to a magistrate and there to answer to a pretended charge of trespassing, all without warrant and without authority of law.

That the plaintiff was afterward, according to an order of the court of common pleas, dismissed, or at least discharged from the action and that the plaintiff was compelled to expend

Williams v. Morris.

the sum of $25 in counsel fees in attaining his release and discharge.

The defendants for answer admit in substance that the defendants did detain him a certain length of time, but that the plaintiff was then trespassing upon defendant's land and that the alleged arrest was made by a duly authorized deputy sheriff and that the arrest was made on view and that the plaintiff was taken, as early as convenient on the following morning, to a justice of the peace, where an affidavit was filed and a warrant was duly issued by the justice and the plaintiff pled guilty, and the justice imposed a fine and that it was this action of the justice of the peace in imposing such fine that was set aside by proceedings in error, and denies the other allegations.

The case was tried to a jury and a verdict of $25 given for plaintiff. Motion was made for a new trial by both the plaintiff and defendants below, which motions were overruled and each of the parties excepted thereto. The charge of the court was excepted to by both of the parties and error is principally predicated upon the law as laid down by the court.

The defendant in error, while not specifically pointing out in his brief, the matters objected to, takes the position for his ground for setting aside the judgment below, that the court below took the view throughout the trial and in its charge to the jury that the arrest in the first place was legal, and left the jury for determination from the evidence, the questions as to whether or not the accused had been detained an unreasonable length of time before being taken to the magistrate, and whether or not he had been detained in an improper place, and whether or not he had suffered at the hands of his captors improper treatment and indignities.

And defendant in error admits that if the view taken by the court below was correct that there was no prejudicial error. The facts show that Mr. Williams, one of the plaintiffs in error, was the owner of a tract, I believe about 130 acres, of land several miles from Columbus; that the other plaintiff in error, Mr. Rutter, was a duly appointed and acting deputy sheriff. On Mr. Williams' farm there was an artificial lake less than ten miles in length, into which had been introduced

some fish, and it was such a lake that a person trespassing thereon for the purpose of fishing would be guilty of an offense under the statutes of Ohio. (99 O. L. 380, Sec. 76.)

That the defendant in error, with two others, came out to this lake about 8:30 o'clock for the purpose of fishing, and between that hour and 10:30 o'clock they were caught in the act of fishing by Mr. Rutter and by him placed under arrest, and that afterwards they were taken up to the house of Mr. Williams, and there detained in a corn crib until the next morning, when they were taken before a justice of the peace, where Mr. Rutter made out an affidavit for the violation of this section, and the defendant in error and his two companions pled guilty and were fined $10 a piece and given thirty days in which to pay the same, or give bond in the sum of $75.

Under section 77, 99 O. L. 380, Gen. Code 12526, it is provided:

"Prosecutions for a violation of the provisions of such section shall be instituted only upon complaint of the person or his agent upon whose land or rights in land or waters the trespass has been committed."

In making out the affidavit for the warrant before the justice of the peace, the deputy sheriff did not state therein that he was the authorized agent of Mr. Williams, but merely signed his name to the affidavit. These proceedings before the justice of the peace were taken up to the court of common pleas and reversed for the reason that the affidavit did not show an offense, that is, as this prosecution could only be instituted by Mr. Williams or his authorized agent and the affidavit did not show that fact, that, therefore, the proceedings before the justice of the peace were erroneous.

However, the warrant on its face was regular and the evidence shows that Mr. Rutter was in fact the authorized agent of Mr. Williams, when this affidavit was made and that he was duly authorized to make a proper affidavit, and that he was also the duly authorized agent for Mr. Williams at the time that he made the arrest.

The defendant in error contends that because no valid complaint had been filed prior to the arrest, that all the proceedings were illegal.

Williams v. Morris.

The court, however, tried the case and took the opposite view that Mr. Rutter as deputy sheriff duly authorized by Mr. Williams might on view lawfully make the arrest even though no complaint had before been filed or that the complaint thereafter filed was not valid in law. To hold that a person found violating this law could not be detained or arrested, without first having the owner file an affidavit, would in many instances defeat its enforcement entirely. Such persons are not likely to kindly wait for these preliminaries, nor are they particular about disclosing their identity, and the return on the officer's warrant would generally be "not found."

We think that the court was right in this view, that it is not necessary under this statute to have a complaint made before an arrest can legally be made, especially when the arresting officer makes the arrest on view. If an officer should arrest on view and thereafter the owner of the land would refuse to institute proceedings, a different question would arise, but in this case the officer had authority from the owner at the time the arrest was made and had full authority to institute proceedings in this case. So the fact that the court of common pleas afterwards set these proceedings of the justice aside would not, in our view, make the arrest illegal.

In fact, the court charged the jury in this case that, "The fact that the plaintiff was subsequently released and discharged from custody by order of the court of common pleas of this county, cuts little or no figure in this case."

In this we think the court was right.

If the arrest in the beginning was legal, the only question which was really in the case was whether or not the plaintiff below was unlawfuly detained or illegally imprisoned from the time that the arrest was actually made until the affidavit was filed before the justice of the peace, and this question was submitted to the jury. Even if the length of time of the detention was not sufficient to make it unlawful, yet whether the detention itself was conducted in a proper or improper manner was certainly a question of fact for the jury to decide.

Defendant in error contends that the statute under which the arrest was made was unconstitutional and, therefore, all

Franklin County.

proceedings were void *ab initio,* and that no protection is afforded to these plaintiffs in error, even though they acted in a manner in which the law would have protected them were it constitutional.

We do not think it is necessary to pass upon the constitutionality of the law in this action, for we are satisfied that these plaintiffs in error were not bound to act or not act under the possibility that the law thereafter might be declared unconstitutional. To otherwise hold would be to take away a safeguard from persons acting under such a law which could not be otherwise than unwise and unjust. A law is presumed to be constitutional until the courts have declared it otherwise. The legislature is presumed only to have passed constitutional laws.

Courts should protect officers and others in the administration of the law as it appears in the statutes, promulgated by proper authority, and so long as they do not transcend the authority given by such statute, their acts should be upheld and they should not be mulcted in damage merely because the law is afterwards declared unconstitutional. The verdict of the jury was in favor of the defendant in error, and we cannot say that even if the law were so construed, as defendant in error contends, that he could have received or have been entitled to a larger verdict.

We, therefore, find that there is no error prejudicial to the defendant in error in this case.

The plaintiff in error raises a question upon the refusal of the court to allow him to introduce certain testimony, and also questions of law arising in the charge of the court. On pages 86, 87, 88, 89 of the record, Mr. Brown was examined in chief by counsel for defendant, and after it was shown where he lived, he was inquired of as to his having seen three persons going towards Mr. Williams' residence, and the following as appears from the record:

"Q. What time of night was that?

"Mr. Nicholson: I object to that unless they identify the parties.

"The Court: Do you expect to identify these people?

### Williams v. Morris.

"Mr. Carpenter: Only by the circumstances is all. There is not much probability that there was two lots of three people going down there at that time of night.

"The Court: Before he answers that question, you may inquire with regard to any description of the men.

"Q. Are you able to give any description of the men? A. Oh, no,—no way at all of knowing whether they were,—I couldn't identify them by no means.

"The Court: Tell whether they were old or young men.

"Witness: They had the appearance of young men.

"Q. (By Mr. Carpenter.) Where had you been during that evening? A. We were sitting out on the porch. We had company and were sitting out on the front porch.

"Q. How long had you been sitting out there? A. Probably all evening,—sitting there in our shirt sleeves, talking. I can tell you that.

"Q. How early in the evening do you say you went out there? A. We probably went out there after supper; we generally eat our supper about seven or eight o'clock in the summertime.

"Q. Do you mean sun time? A. Yes. We go by sun time out there.

"Q. Now, then, what would you say as to whether you were out there from that time until the time you saw these parties? A. Oh, yes, sir. I was out there.

"Q. Had you seen anything else; that is, a group of three passing there, carrying fishing poles? A. I had not.

"Q. Did you see another group of three later than that passing there, carrying fishing poles,—I mean later than the time you saw,—? A. I only saw the one gang of three. That is all I remember of seeing.

"Q. (By the Court.) How long did you remain on your porch in view of the highway that night? A. Oh, it was probably—just after supper we went out there,—I suppose probably eight o'clock, something like that,—. We stayed there until ten or probably later. We had company that afternoon and we were sitting out on the front porch.

"Mr. Nicholson: I cannot see where even the time would

be material, if the court please. These boys admit they went down that way and that they were there. They say about eight-thirty and Rutter says about ten. I cannot see the materiality of this testimony.

"Q. (By Mr. Carpenter.) What time was it that you saw these three parties passing along with fishing poles?

"Question objected to by the plaintiff; objection sustained; exception by the defendants.

"Mr. Carpenter: Let the record show that we expect the witness, if permitted to answer the question, to say that it was between nine and ten o'clock that night.

"And thereupon, the court sustained the above objection of the plaintiff, to which ruling of the court the defendants excepted.

"Q. Mr. Brown, what, if anything, did you do with reference to this matter after you saw them pass your house south?

"Question objected to by the plaintiff; objection sustained; exception by the defendants.

"Mr. Carpenter: Let the record show that if the witness were permitted to answer the question, he would testify that he called up Mr. Williams' residence and talked with Mr. Rutter.

"And thereupon, the court sustained the above objection of the plaintiff, to which ruling of the court the defendants excepted.

"Q. What time was it that you talked to Mr. Rutter?

"Question objected to by the plaintiff; objection sustained; exception by the defendants.

"Mr. Carpenter: Let the record show that if the witness were permitted to answer the question, he would say that it was after ten o'clock when he got them on the 'phone.

"And thereupon, the court sustained the above objection of the plaintiff, to which ruling of the court the defendants excepted."

Mr. Rutter, the man making the arrest, had testified that after he had retired the telephone began to ring, and it continued for some time. He then rose and a friend told him over the 'phone that some fellows had gone down his way with fish poles, or something of that kind, and that thereupon he got his

Williams v. Morris.

gun and went down to the lake and made the arrest. As the length of time which the defendant in error was confined in the corn crib, between the time of the arrest and the filing of the affidavit, was a material element in the determination by the jury whether or not the detention was unlawful, we think that it was prejudicial error to exclude the testimony of Mr. Brown as to when he called up Mr. Rutter.

Mr. Nicholson, counsel for plaintiff below, admits the identity of these boys, as will be seen from the record above quoted. Therefore, it seems to us that it was quite material, not only as showing the actual time that this arrest was made, but in corroboration of the testimony of the defendants below as to the time that the arrest actually was made, and in opposition to the testimony of plaintiff below and his companions upon the same matter. For, as before said, the real question of issue in this case, as viewed by the court below, was whether or not such detention was unlawful and the length of time of such detention was a material element in considering whether it was in fact unlawful.

In the instructions of the court to the jury upon the question of what damage should be allowed to the defendant, and the character of the same, the court charged as follows:

"If you find for the plaintiff, the question of damages then arises, and you should award such damages as will compensate the plaintiff for the injury which he sustained, unless you find that the acts of the defendants were malicious. Then you may add what is termed in law 'exemplary damages,' or 'smart money.' If you find for the plaintiff, as I have said, the plaintiff is entitled to compensatory damages, although the defendant may have acted in good faith and in the belief that they were discharging their duties in the premises. But if you find that the defendants arrested and imprisoned the plaintiff maliciously, then the defendants are liable to the plaintiff for compensatory damages and you may, if you see proper, also assess further damages as smart money, that is, exemplary damages. By a malicious act is meant an act that is wanton and wilful, without regard to the rights of others. That is an act that is

malicious. You will determine whether the defendants acted maliciously. If they acted maliciously you may add smart money to the actual damages which you find this plaintiff to have sustained, smart money is given in the way of pecuniary punishment for malicious acts. In allowing for compensatory damages you should allow such damages as will fully and reasonably compensate him for the injuries which he has sustained. The elements for which compensatory damages may be allowed include pain and suffering, if any, mental and physical, the loss of time, if any, in consequence of such false imprisonment, and injury, if any, to the reputation or social position as well as for shame and mortification caused by false imprisonment, and also reasonable attorney's fees to the plaintiff for services of the attorney in prosecution. The plaintiff claims $25 in obtaining his release. You may consider that also. And if you find that the defendants not only falsely, but that they also maliciously imprisoned the plaintiff, then you may allow the plaintiff, in addition to the compensatory damages such further sum by way of exemplary damages as you in your judgment may think just and proper in view of all the facts and circumstances.''

We think that there are two serious objections to this charge, as given by the court to the jury. The first is that part of it which refers to what constitutes or may be allowed under the head of compensatory damages.

The court correctly stated that if the detention was unlawful, that if it was unreasonable, the defendants are liable and they were so, even though they might have acted in good faith, and that if the jury found that the detention was unlawful, they should allow the plaintiff below compensatory damages, but the court erred when the jury was instructed that they might consider as a part of such compensatory damages, reasonable attorney fees to the plaintiff for services of the attorney in prosecution.

In the recent case of *United Power Co.* v. *Matheny,* 81 Ohio St. 204, 210 [90 N. E. Rep. 154], which was a case brought by a passenger to recover damages for an unlawful and forcible

Williams v. Morris.

ejectment from a street car, and in which a very much similar charge was given, the court says:

"Again, the court proceeded to correctly define the circumstances under which, if found by the jury, they might award to the plaintiff not only compensatory damages, but in addition thereto exemplary or punitive damages. The court even cautioned the jury that they should not award exemplary damages, unless they should find that the expulsion of the plaintiff from the car "was done not only without justification, but in a malicious and insulting manner." The court then proceeded to say, 'Otherwise, you should only allow such an amount as would fairly compensate him. * * * And as a matter of compensation you would have a right to allow him a reasonable amount for the services of his counsel in bringing and maintaining this action against the company.' In this last sentence, we think that the court fell into a serious error. * * *

"But, although we have made a somewhat extended search we are not aware of any well considered case in which it was held that, in the absence of statute or express agreement, attorney's fees might be included as part of the damages where compensatory damages only could be allowed. There are, however, numerous cases in which the contrary doctrine has been distinctly announced and applied. * * *

"The court below properly said to the jury that if they should find that the ejectment of plaintiff from the car was not justified, but was not done with malice or in an insulting manner, they could award compensatory damages only; but the court erred in instructing the jury, in that connection, that, in case they should so find, as a matter of compensation they might allow to the plaintiff a reasonable amount for services of his counsel."

While counsel fees in bringing the action in the court below might be a proper matter to consider in allowing damages, even though it is sometimes done under the theory of compensatory damages to the plaintiff who brings the action, it can only be considered and allowed in cases where the facts found by the jury are such as would justify them in allowing punitive or ex-

emplary damages designated in the case at bar as "smart money." The other matter in this charge which seems to us to be erroneous, is that in allowing compensatory damages the jury might consider that $25 which was paid to the counsel in having the proceedings of the justice of the peace set aside. Under the facts as developed in this case, we do not think that should have submitted to the jury. The arrest in this case was lawful and the warrant issued was legal on its face. There was no false arrest, neither was there a false imprisonment after the proceedings were begun in the office of the justice of the peace.

In the case at bar, it is clear that under the testimony if the plaintiffs in error would have directly taken the defendant in error to the justice of the peace and there filed an affidavit, and a warrant was then issued, that the plaintiff below would have had no cause of action. There was no imprisonment, or at least no false imprisonment after the affidavit was filed and the warrant issued.

The justice of the peace had jurisdiction and did pass upon the affidavit; the mere fact that his judgment was erroneous would not make the plaintiffs liable. The testimony clearly shows that the justice of the peace gave the plaintiff below thirty days' time in which to pay the fine or give bond, and in the meantime let him go on his recognizance, and that the deputy sheriff hauled him back to the city. So we are at a loss to know upon what principle the defendants below could be held liable for attorney fees that were incurred in setting aside the judgment of the justice of the peace.

If these attorney fees had been incurred in an action brought to directly release the plaintiff below from imprisonment, that is from a false imprisonment, then it might have been proper; but in the case at bar there was no false imprisonment, actual or constructive, resulting from the action of the justice of the peace.

In an action for malicious prosecution, then such attorney fees, under a proper charge of the court, could be considered by the jury in making up their award of damages, but we think

Williams v. Morris.

that under the circumstances of this case, under a charge of false arrest and imprisonment, that such services of an attorney could not be considered as an element of damage.

The plaintiff in error complains further of this charge of the court wherein the jury is instructed that,

"Rutter, agent of the plaintiff, is justified for a length of time only reasonably required to take the detained person, that is the plaintiff, to the proper officer."

This is admitted to be correct as an abstract proposition of law, but is claimed to be misleading. But we think, considered with other matters in the charge, that it did not mislead the jury.

The court seems to have submitted this matter fully and clearly to the jury and that the defendants below would not be liable unless Rutter did detain the plaintiff for an unreasonable time, and in an unlawful manner.

Judgment of the court below, for error in the rejection of testimony offered by defendant below, and erroneous and prejudicial statement of the law in his charge to the jury, will be reversed and the case remanded to that court for further proceedings.

**Jones** and **Allread, JJ.,** concur.

---

## INTOXICATING LIQUORS.

[Trumbull (7th) Circuit Court, October Term, 1910.]

Laubie, Metcalf and Taggart, JJ.

[Judge Taggart of the fifth circuit sitting in place of Judge Fillius.]